IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**REBECCA DETRICK,**

        **Plaintiff,**

vs.                                                                No. CIV 02-0662 LH/LCS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

        **THIS MATTER** is before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 16, 2003 *(Doc. 12)*. Defendant filed a Response on March 4, 2003 *(Doc. 14)* and Plaintiff filed her Reply on March 17, 2003 *(Doc. 15)*. The parties have each consented to having the United States Magistrate Judge conducting all further proceedings in this matter pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being otherwise fully advised, finds that Plaintiff's motion is not well-taken and should be **DENIED**.

### I.    BACKGROUND

        Plaintiff was found disabled within the meaning of the Social Security Act beginning November 16, 1981, due to bilateral hearing loss with poor speech discrimination of a severity to meet section 2.08B of the Listing of Impairments. R. 25. Plaintiff completed a report of

1

continuing disability interview on May 13, 1997.  R. 63.  Plaintiff was notified that her benefits would cease on November 1, 1997 because her impairments were found to longer exist at the listings level of severity.  R. 26, 76.  A non-attorney, Laura Rael, accepted an appointment as Plaintiff's representative on February 2, 1998.  R. 59. Plaintiff completed a Request for Reconsideration – Disability Cessation on February 2, 1998.  R. 79.  Plaintiff appeared before a Disability Hearing Officer on August 11, 1998, and the Disability Hearing Officer concluded that the previous determination that Plaintiff's disability has ceased was correct.  R. 122-23, 135-37.  Ms. Detrick requested a hearing by an ALJ on November 5, 1998.  R. 140.  Plaintiff further requested that payments from the Commissioner continue while her request for hearing by the ALJ was pending.  R. 139.

 A hearing before the ALJ was scheduled for February 24, 2000.  R. 55.  Plaintiff did not appear at this hearing.  R. 463.  A hearing was again scheduled before the ALJ on March 10, 2000.  R. 51.  Plaintiff requested that the ALJ reschedule the hearing to allow Plaintiff to find another representative.  R. 466.  On March 17, 2000, Chris Elias Garcia, from the Legal Aid Society of Albuquerque accepted an appointment as Plaintiff's representative. R. 49.  A hearing was scheduled before the ALJ on May 1, 2000.  R. 46.  It is not clear from the record why this hearing did not take place.  A hearing was again set for August 31, 2000.  R. 42.  At the hearing, Plaintiff indicated that Mr. Garcia had withdrawn from his representation of Ms. Detrick, because of her failure to cooperate with him.  R. 473.  The ALJ agreed to permit Plaintiff another continuance.  R. 474.  Plaintiff was notified of a hearing set for December 12, 2000.  R. 38.  It does not appear that his hearing took place.   Plaintiff was notified that a hearing was scheduled before the ALJ on February 22, 2001  R. 34.  Plaintiff appeared at the February 22, 2001 hearing

without a representative. R. 478-79. The ALJ declined to continue the matter again, and Plaintiff testified on her own behalf. R. 48081.

The ALJ issued his decision on January 30, 2001. R. 34. In his decision, the ALJ concluded that medical improvement to Plaintiff's impairments had occurred, relating to Plaintiff's ability to work, that none of the exceptions to medical improvement set forth in the relevant statutes or regulations applied, and found that Plaintiff was not disabled within the meaning of the Social Security Act. R. 35.

Plaintiff filed a request for review of the ALJ's decision on November 27, 2001. R. 11. She additional evidence to the Appeals Council. R. at 10. On May 8, 2002, the Appeals Council, after considering the additional evidence, denied the request for review. R. at 8-9. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. On June 6, 2002, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). On January 6, 2003, Plaintiff filed a Notice of New Application.

## STANDARD OF REVIEW

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner." *Casias v. Secretary of Health &*

*Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  A decision by an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits or supplemental security income, a plaintiff must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the plaintiff from engaging in substantial gainful activity.  *Thompson*, 987 F. 2d at 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423 (d)(1)(A)).  At the first four levels of the sequential evaluation process, the plaintiff must show that she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the plaintiff is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience.  *Id.*

After a claimant has been receiving disability benefits for some period, the Social Security Administration is required to review the claimant's case periodically, to determine whether the claimant's benefits should be terminated.  *Shepherd*, 184 F.3d at 1199; 20 C.F.R. § 404.1594 (a). To terminate a claimant's benefits, the Commissioner must show: that the claimant's medical condition has improved; that the improvement is related to her ability to work; and that the claimant is currently able to engage in substantial gainful activity.   20 C.F.R. § 404.1594. Medical improvement is defined as "any decrease in the medical severity of [the claimant's]

4

impairment(s) which was present at the time of the most recent favorable medical decision" that claimant was disabled or continue to be disabled". 20 C.F.R. § 404.1594(b)(1). A determination that there has been a decrease in medical severity must be based on improvement in the signs, symptoms, and/or laboratory findings associated with the claimant's impairments. *Id*. Medical improvement is not related to the claimant's ability to do work if there has been a decrease in the severity of the impairments, "but no increase in [claimant's] functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(2). If any medical improvement is not related to the claimant's ability to do work, benefits will continue. *Id*.

## ANALYSIS

In his opinion, the ALJ noted that Plaintiff was found disabled in 1981 due to bilateral hearing loss. R. 25. The ALJ noted that after a comprehensive continuing disability review, Plaintiff's impairments were found to no longer exist at the listings level. R. 26. The ALJ found that Plaintiff had not engaged in work activities since November 1, 1997. R. 26. The ALJ found that Ms. Detrick has severe neurological and mental impairments and a non-severe hearing impairment, as well as a severe musculoskeletal impairments with non-severe neoplastic impairment. R. 26.

Plaintiff alleges two claims of error: first, that the ALJ erred in finding medical improvement and that the ALJ erred in disregarding the opinion of Plaintiff's counselor in making his determination of medical improvement; and second, that the Appeals Council erred in failing to discuss relevant new evidence.

### A.     Whether the ALJ erred in finding medical improvement

Plaintiff concedes that there has been a decrease in severity of the impairment for which

she was initially approved. Plaintiff argues, however, that her mental impairment and seizure disorder, as well as a 5 pound lifting restriction preclude her from performing sustained employment.

### 1.     Plaintiff's hearing impairment

Plaintiff's records indicate that she was seen by Shanna Skubal, MA, CCC/A, an audiologist, for a hearing evaluation on October 2, 1997. R. 210. Ms. Skubal stated in her report that Plaintiff "has hearing sensitivity within normal limits with normal middle ear function bilaterally." R. 210. At the hearing, Plaintiff testified that "my hearing is all right." R. 490. The ALJ's determination of medical improvement as to Plaintiff's hearing impairment is thus supported by substantial evidence in the record.

### 2.     Plaintiff's seizure disorder

Plaintiff alleges that the finding of medical improvement is in error, because her various other impairments prevent her from working. The ALJ found that Plaintiff has an impairment or combination of impairments that are severe. R. 31. A review of the record indicates that Plaintiff has a seizure disorder, which is treated by anti-convulsive medications, including Tegretol[1] and Depakene.[2]

On July 16, 1996, Plaintiff was seen by Daniel E. Raes, M.D., a treating physician, for her

---

[1]     Tegretol or carbamazepine is a drug that affects the nerves and brain. It works by decreasing impulses in nerves that cause seizures and pain and is used to treat seizures and nerve pain such as trigeminal neuralgia and diabetic neuropathy. *Available at* http://my.webmd.com/content/drugs/2/4046_1566.htm?lastselectedguid={5FE84E90-BC77-4056-A91C-9531713CA348.

[2]     Depakene or valproic acid is used to treat various types of seizure disorders. *Available at* http://my.webmd.com/content/drugs/2/4046 _1722.htm?lastselectedguid ={5FE84E90-BC77-4056-A91C-9531713CA348.

seizure disorder. R. 188. In his notes, Dr. Raes noted that Plaintiff's blood work indicated that she had not been taking her medications for her seizure disorder. *Id*. On July 31, 1996, Dr. Raes indicated that Plaintiff had reported a seizure one or two days previously, with a resulting car accident. R. 183. However, Dr. Raes indicated on August 5, 1996 that Ms. Detrick reported that her accident was due to her car breaking down, rather than a seizure. *Id*. On March 14, 1997, Dr. Raes noted that Plaintiff was "doing very well with fewer seizures and under good control." R. 159. On February 24, 1997, a physical therapist, referred by Dr. Raes, noted that Plaintiff reported that her last seizure was 18 months previously. R. 160. Plaintiff was seen at the Eastern New Mexico Medical Center ("ENMMC") emergency room by Dr. Raes on December 11, 1996 for accidental overdose of Tegretol. R. 173. Although Plaintiff reported that she had a seizure, Stephen Evans, M.D. of the ENMMC indicated that Ms. Detrick had pseudo-seizure instead. R. 174. In his follow-up, Dr. Raes noted that Plaintiff's valproic acid level was low. R. 176. On September 30, 1997, Dr. Raes indicated that Plaintiff "has had no seizures for 24 months. Seizures under control." R. 199. On January 16, 1998, Plaintiff reported that her last seizure was approximately eight months previously. R. 276. Plaintiff was evaluated by Don F. Seelinger, M.D., a neurologist, on February 9, 1998. R. 238-39. Dr. Seelinger noted that Plaintiff's medication levels were subtherapeutic. R. 239. Plaintiff reported to Dr. Seelinger that she had seizures four times in the previous four to six months. R. 239. After Plaintiff failed to show up for Equitesting and an EEG, Dr. Seelinger terminated his care of Plaintiff and suggested that she see another doctor. R. 280. On March 4, 1998, Carl F. Kupferer, D.O, another of Plaintiff's treating physicians, noted that Ms. Detrick had reported seizures on March 1 and March 2, 1998. R. 269. Plaintiff was seen in the emergency department of Presbyterian Kaseman

hospital on April 27, 1998, and Barbara G. Norris, M.D. noted that Ms. Detrick had reported that she had missed many doses of her seizure medications over the last three to four weeks. R. 284. Dr. Norris indicated in her notes that Ms. Detrick had "pseudoseizure versus seizure, probably not true seizure today. Noncompliance with medications." R. 285. Dr. Norris further noted that Plaintiff is an "emergency room abuser" who was "here at least once as week for different problems." R. 288. In her report on a previous emergency room visit by Plaintiff, Dr. Norris noted that "This woman is known to me from prior emergency room visits. Review of her old chart shows that she was here three times in March, and each time received narcotics." R. 298. The record indicates that Plaintiff was similarly seen in the emergency department four times in April 1998, for complaints ranging from pain from falling, headache, coughing, and pseudosiezure. *See e.g.,* R. 284-298. A report by Patricia L. Erwin, LMSW, a clinical therapist indicated that Plaintiff "seemed to display some drug seeking behavior." R. 149.

In September of 1998, Plaintiff reported that she had a seizure. R. 409. Plaintiff reported a seizure to J. Liljestrand, M.D. in January 2000. R. 343. On December 18, 2001, Dr. Liljestrand further noted in a letter on behalf of Plaintiff that Ms. Detrick had deteriorated in her seizures over the previous six to eight weeks. R. 458. Douglas Barrett, M.D., noted that an EEG and MRI were performed upon Ms. Detrick while under Dr. Barrett's care. R. 457. Dr. Barrett noted that the EEG "was unremarkable"and that the MRI showed evidence of Plaintiff's prior head injury, but demonstrated "no other abnormalities." *Id*. Dr. Barrett further noted that "[t]here have been striking vacillations in [Ms. Detrick's] drug levels raising the issue of compliance." *Id*.

The medical record demonstrates that Plaintiff has often been noncompliant in taking the

medications prescribed for her seizure disorder. The ALJ may properly discount Plaintiff's complaints of seizures given the objective evidence demonstrating Plaintiff's failure to comply with her prescribed form of treatment. *See Diaz*, 898 F.2d at 777.[3]

Plaintiff has been inconsistent in her report of seizures to her various physicians. Both Dr. Evans and Dr. Norris, who saw Plaintiff several times in the emergency department, noted that Plaintiff may suffer from pseudoseizure, versus true seizure. R. 174. Even accepting as true Plaintiff's self-report of seizure, it appears from the medical record that Ms. Detrick, despite widely vacillating medication levels, experienced far few than the eight per year she testified to having. R. 289. At the time of the hearing, Plaintiff indicated that she had not seen a doctor for her seizures, except to get medications, for over a year, and perhaps closer to two years. R. 489.

The ALJ need only accept the testimony of the VE insofar as it incorporates the limitations which he accepts. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000). The ALJ incorporated suffering from seizures into the hypothetical he posed to the VE. R. 508. The ALJ did not find Plaintiff's testimony credible as to the number of seizures which occur. Plaintiff testified that she is usually taken to or calls the emergency room when she has a seizure. R. 508. Although the record demonstrates that Plaintiff was frequently seen in the emergency room, the record does not indicate that Plaintiff indeed suffered from eight or nine seizures per year.

"Credibility determinations are peculiarly the province of the finder of fact, [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of*

---

[3]     In a recent unpublished decision, the Tenth Circuit noted that where a claimant admitted to some neglect in taking his medication for seizure disorder, and where substantial evidence indicated that the claimant failed to comply with his prescribed regimen, such evidence "properly precluded a decision in [claimant's] favor at step three." *Powell v. Barnhart,* 2003 U.S. App. LEXIS 11669, *4 -5 (10th Cir. June 13, 2003)(internal citations omitted).

*Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). In determining the credibility of pain testimony, the ALJ can weigh and evaluate numerous factors including, "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the plaintiff and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Moreover, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."*Id*. at 1133.

In this case, the ALJ adequately linked his credibility finding to the record, specifically enumerating the many inconsistencies between Plaintiff's complaints and medical evidence in the record. The ALJ noted that Plaintiff's self-report of seizures varied with her various treatment providers. The ALJ further noted Plaintiff's failure to cooperate with the testing ordered by her treating doctors. The ALJ, in noting such inconsistencies, properly evaluated the "subjective measures of credibility that are peculiarly within the judgment of the ALJ" and his credibility determination is supported by substantial evidence. *See Huston*, 838 F.2d at 1132; *see also, Diaz*, 898 F.2d at 777.

Moreover, the ALJ properly discounted Plaintiff's complaints of seizures given the uncontroverted evidence in the record of Plaintiff's failure to follow her recommended treatment. *See Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). An evaluation of Plaintiff's residual functional capacity completed by a nonexamining consultative physician included no exertional, postural, manipulative, visual, or communicative limitations. R.

226-27. The evaluating physician only indicated that Plaintiff should avoid exposure to hazards as a result of her possible seizures. R. 229.

### 2. Plaintiff's mental impairment

Plaintiff further claims that the ALJ failed to properly evaluate the impact of her mental impairment in finding medical improvement. Plaintiff was evaluated by Cheryl Hollingsworth, M.D. on September 26, 1997. R. 206-209. Dr. Hollingsworth noted that Ms. Detrick had major depression in full remission, but found no other mental impairments. R. 209. A functional capacity assessment completed by Leroy Gabaldon, Ph.D, on October 7, 1997, noted only moderate limitations in the ability to understand and remember detailed instructions and in the ability to carry out detailed instructions. R. 219. Dr. Gabaldon also noted slight restrictions in the activities of daily living, slight difficulties in maintaining social functioning, and slight deficiencies in concentration, persistence or pace, as well as one or two episodes of deterioration or decompensation in work or work-like settings. R. 219. An integrated clinical assessment completed by Patricia L. Erwin, LMCW, a clinical therapist, and Jaime Michel, M.D., a consulting psychiatrist, indicated that Plaintiff possesses adequate skills to perform the activities of daily living. R. 147-50. The report of the assessment indicates that Plaintiff had previously been seen but had shown no "consistent investment in treatment" and although further assessment was recommended, such assessment "may be compromised by Rebecca's lack of investment in treatment." R. 150.

### a. Whether the ALJ erred in disregarding the opinion of the counselor in considering Plaintiff's mental impairment

Plaintiff claims that the ALJ erred in affording the medical records of her counselor,

Robert W. Townsend, Ph.D candidate, LPCC, LMSW, no weight.   Plaintiff was seen by Mr. Townsend from September 1, 199 through April 7, 2000.  R. 364-399.  Mr. Townsend noted that Plaintiff's presenting issues included panic attacks, post-traumatic stress disorder, and anxiety.  R. 368.  The ALJ correctly noted that Mr. Townsend is not an acceptable medical source under 20 C.F.R. § 416.913.  R. 30.  Under the applicable regulations, Mr. Townsend's records may be used to assess the Plaintiff's disabling assertions.  20 C.F.R. § 416.913.  In discounting Plaintiff's disabling assertions and presented in Mr. Townsend's records, the ALJ noted that Mr. Townsend's records include numerous references to Plaintiff's claim of suffering from terminal cancer, a claim which could not be corroborated by the ALJ or by Mr. Townsend, and which was not referenced any where else in the medical record.  R. 27.  Mr. Townsend's records indicate that other information provided by Plaintiff and upon which Mr. Townsend relied has also been unverifiable (i.e., after Plaintiff reported that a shelter where she was residing was refusing her food, Mr. Townsend requested a food basket from Jewish Family Services.  Jewish Family Services confirmed that the shelter does provide occupants food).  R. 386.   In his last Concurrent Clinical Assessment, dated March 30, 2000, Mr. Townsend  indicates that "Rebecca had met all treatment goals by 01/00."  R. 396.  Mr. Townsend requested weekly sessions with Plaintiff until June 30, 2000, in light of a revised treatment plan to deal with Plaintiff's cancer treatment and resulting social isolation and suicidal ideation. *Id*.   It appears that Plaintiff was not seen by Mr. Townsend after April 7, 2000.  R. 393.  A review of Mr. Townsend's treatment records in light of the medical record indicates that his records are in part not supportable and are inconsistent with the record as a whole.  Pursuant to 20 C.F.R. § 404.1527, the ALJ did not err in affording Mr. Townsend's opinion no weight as to Plaintiff's disabling assertions with respect to the magnitude

of Plaintiff's mental impairments, given his reliance on Plaintiff's unverifiable complaints of terminal cancer, and given the ALJ's credibility finding as to Plaintiff's complaints.

Beyond Mr. Townsend's opinion as to Plaintiff's mental impairment, which the ALJ properly accorded no weight, the record indicates that Plaintiff's mental impairment does not prevent her from working. The ALJ's finding that Plaintiff suffers from a non-listings severe mental impairment with a reduced capacity for work is supported by substantial evidence. R. 206-209, 219. The ALJ incorporated the limitations noted by Dr. Gabaldon into the hypothetical he posed to the VE at the hearing. R. 505. The VE testified that a person with Plaintiff's vocational profile who had moderate limitations in understanding detailed instructions and in following detailed instructions would nevertheless be able to perform several jobs, including jobs as a laundry sorter and as an assembler, printed products. R. 505-506. The ALJ thus did not err in finding that Plaintiff's mental impairment does not prevent her from working.

### 3.     Plaintiff's five-pound lifting restriction

Plaintiff further claims that the ALJ erred in failing to incorporate a five-pound lifting restriction into the hypothetical posed to the VE at the hearing. The five-pound lifting restriction was noted in the discharge plans for Plaintiff's emergency room visit of August 4, 1997, for low back pain related to the lifting of heavy boxes while moving. R. 197. This lifting restriction is noted nowhere else in the record. *See, e.g.,* R. 226 (no lifting restriction noted), 294 (no curtailing of activities necessary). There is nothing in the record to suggest that such lifting restriction was permanent. In addition, the record indicates that Plaintiff has engaged in various activities which would be precluded by a permanent five-pound lifting restriction. *See* R. 340 (Plaintiff seen in emergency room on January 19, 2000 after falling while bowling; rest with light

duty prescribed for one week).  At the hearing before the ALJ on February 22, 2001 Plaintiff testified that she could lift no more than 15 pounds "once in a while" and can carry her dog, who weighs nine pounds.  R. 495.  In her Report of Continuing Disability Interview, Plaintiff noted that she was not limited in mobility and could perform light housework. R. 67.   The hypothetical posed to the VE included a lifting restriction of 15 pounds occasionally. R. 506.  The ALJ need only accept the testimony of the VE insofar as it incorporates the limitations which he accepts as true.  *See Qualls*, 206 F.3d at 1373.  The ALJ did not err in failing to incorporate a five-pound lifting restriction into the hypothetical posed to the VE, and by instead incorporating a fifteen-pound lifting restriction.  The fifteen-pound lifting restriction is supported by substantial evidence in the record.

The ALJ did not err in finding medical improvement.  The uncontroverted medical evidence indicates improvement in Plaintiff's hearing problem, the impairment for which she was originally found disabled.  In addition, the record demonstrates that although Plaintiff suffers from a non-listings severe mental impairment, a severe seizure disorder, as well as  severe musculoskeletal impairments with non-severe neoplastic impairment (R. 26), such impairments did not preclude Plaintiff from working at the time the decision of the ALJ issued.[4]  The ALJ properly incorporated the limitations posed by such impairments which he accepted, after making a credibility determination of Plaintiff's assertions, into the hypotheticals posed to the VE. *See Qualls*, 206 F.3d at 1373.  The ALJ's determination that there has been a decrease in medical severity was properly based on improvement in the signs, symptoms, and laboratory findings

---

[4]	Plaintiff has indicated that she is receiving benefits under a later claim with the Social Security Administration.

associated with the Plaintiff's impairments, as required by 20 C.F.R. § 404.1594(b)(1). Moreover, the record demonstrates that medical improvement was related to the Plaintiff's ability to do work and there has been an increase in Plaintiff's functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(2). The ALJ's determination of medical improvement was thus supported by substantial evidence.

**B.     Whether the Appeals Council erred in failing to discuss relevant new evidence**

Plaintiff argues that the Appeals Council erred by failing to specifically discuss the new evidence she provided.  The record indicate that the Appeals Council "considered the additional evidence identified" but nevertheless concluded that "this evidence does not provided a basis for changing the Administrative Law Judge's decision." R. 8-9.

This Court's statutory jurisdiction over this matter is confined to the final decision of the Commissioner, in this instance, the decision of the ALJ.  *See* 42 U.S.C. § 405(g).  The administrative decision of the Appeals Council is not subject to reexamination by the District Court.  *See Browning v. Sullivan,* 958 F.2d 817, 822-823 (8th Cir. 1992). 20 CFR § 404.970 (b) provides that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  It is apparent that neither the statute nor the applicable regulations require the Appeals Council to provide a detailed discussion of new evidence reviewed.  Plaintiff relies

upon *Stephens v. Callahan*, 971 F.Supp. 1388, 1393 (N.D. Okla. 1997), for such proposition. I do not find this case persuasive, in light of the language of the governing statute and relevant regulations. Instead, I find the reasoning of the Eighth Circuit in *Browning* far more persuasive. This Court lacks jurisdiction to consider the administrative decision of the Appeals Council, and may not address Plaintiff's claim of error. Even if the Court has jurisdiction to consider the administrative decision of the Appeals Council, I note that neither the statute nor the applicable regulations require the Appeals Council to specifically address each piece of new evidence it considers. *Browning v. Sullivan,* 958 F.2d at 822-823.

## CONCLUSION

I find that Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 16, 2003 *(Doc. 12)* is not well-taken and should be **DENIED**, that the Commissioner's decision be **AFFIRMED**, and that this action be **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 16, 2003 *(Doc. 12)* is **DENIED.**

**IT IS FURTHER ORDERED** that this matter be **DISMISSED WITH PREJUDICE.**

A Judgment in accordance with this Memorandum Opinion and Order shall be entered forthwith.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**